UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATE OF AMERICA,

    Plaintiff,

vs.

ALVARO ANTONIO
PADILLA-MELENDEZ,
    a/k/a "El Topo"

    Defendant.
_____/

**CRIMINAL NO. 08-301 (RMU)**
(Under Seal)

## SEALED
## MEMORANDUM IN SUPPORT FOR DOWNWARD DEPARTURE

**COMES NOW** the Defendant, Alvaro Antonio Padilla Melendez, (herein after referred to as Alvaro Padilla) and respectfully requests this Honorable Court consider this Memorandum in Response to the Government's Motion for Downward Departure and tailor a sentence that is lower than and less severe than the guideline recommendation and alleges as follows:

1. On December 9th, 2005 Alvaro Padilla was arrested in Buritaca, Colombia pursuant to a warrant and request for extradition to the United States of America. The basis for the arrest warrant and request for extradition was a sealed indictment that was filed in the United States District Court for the District of Columbia on September 14th, 2005.

2. Alvaro Padilla was detained and held in the maximum security prison in Combita, Colombia for approximately two (2) years while the Colombian courts reviewed the United States Department of State request for extradition and was extradited to the United States of America on December 9th, 2007.

3. Alvaro Padilla appeared before a United States District Court Magistrate on or about December 10th, 2007 where he was arraigned and pre-trial detention was ordered.

4. On September 29th, 2008 the United States Department of Justice pursuant to plea negotiations filed a one-count Superseding Information, Docket No. 1:08cr301, which charged Alvaro Padilla with one count of conspiracy to distribute five kilograms or more of cocaine, intending and knowing that the cocaine will be unlawfully imported into the United States, in violation of 21 USC §§ 959, 960 and 963 and Aiding and Abetting in violation of 18 USC § 2.

5. On September 30th, 2008 Alvaro Padilla entered into a cooperation plea agreement and pled guilty to the Superseding Information in docket no. 1:08cr301.

6. A Pre-Sentence Investigation Report was prepared on April 7th, 2009 and revised on April 16th, 2009.  The sentencing hearing is scheduled for June 30th, 2009 at 1:30 p.m.

## PLEA AGREEMENT / PRE-SENTENCE INVESTIGATION REPORT
## AND RECOMMENDED TOTAL OFFENSE LEVEL

7. Alvaro Padilla has reviewed the P.S.I. prepared by United States Probation Officer Crystal S. Lustig and has no objections.  In accordance with the P.S.I., Alvaro Padilla's total guideline offense level is reported to be twenty seven (27) with a recommended sentencing range of seventy (70) to eighty seven (87) months with a criminal history category I.

8. Paragraph 8 of the Plea Agreement Alvaro Padilla and the government agreed that a sentence of eighty one (81) months incarceration is the appropriate sentence to be imposed for Alvaro Padilla's criminal conduct to which he pled guilty.  The parties further agree that pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, to present this plea agreement between the parties to the Court for its approval.  If the Court accepts the plea agreement and the specific sentence agreed upon by the parties, then the Court will embody in the judgment and sentence the disposition provided in the plea agreement, pursuant to Rule 11(c)4 of the Federal Rules of Criminal Procedure.  The parties understand, however, that in

light of other factors the Court may not agree with such a sentence and may reject the plea agreement.

9. However, in the same paragraph it is agreed between the parties that the eighty one (81) month sentence does not include or prevent the government from filing a motion to depart from the eighty one (81) month sentence in accordance with U.S.S.G. 5K1.1 or Rule 35 if Alvaro Padilla provides substantial assistance or prevent the court from granting such a motion and further reducing the eighty one month agreed sentence.

10. Alvaro Padilla has provided substantial assistance and has reason to believe that the government will be filing a motion for downward departure before or on the date of sentencing.

11. Alvaro Padilla will request at the time of sentencing that the court will agree that the sentence of eighty one (81) months imprisonment is the appropriate sentence for the offense for which Alvaro Padilla has pled guilty and further depart and reduce that sentence by an amount which is equal to the quantity and quality of the substantial assistance that's been provided.

12. Alvaro Padilla will be requesting that this Honorable Court reduce the eighty one (81) month sentence by forty percent (40%) for the substantial assistance provided and request that the court sentence Alvaro Padilla to forty eight (48) months.

## COOPERATION

13. The following outlines the substantial assistance provided by Alvaro Padilla.

**IMMEDIATE COOPERATION:**

14. Alvaro Padilla was extradited and arrived in the District of Columbia on December 9th, 2005. As soon as counsel met with Alvaro Padilla a decision was made to cooperate and on January 21st, 28th and February 14th counsel forwarded emails and letters to Assistant United States Attorney Patrick Hearn advising of Alvaro Padilla's desire to cooperate in his case and in

several other pending investigations. Prosecutors in the Middle District of Florida, Tampa Division, also expressed their desire to speak to and utilize the information that Alvaro Padilla was able to provide. Alvaro Padilla's first debriefing was on March 3rd, 2008.

### U.S. v. Hernan Giraldo Serna et. al. (Case No. 04-114-RWB)

15. Originally Alvaro Padilla's intention was to cooperate against co-defendants who are named in the indictment in which he is charged case number 05-341-RMU (original indictment). However, at the first debriefing it became evident that Alfredo Manuel Vengochea, the lead defendant in case number 05-341-RMU, was already cooperating and there were ongoing negotiations with the other co-defendants in this case and therefore, the prosecutor's main focus was the cooperation that Alvaro Padilla could provide with regard to three (3) defendants, Huber Gomez-Luna, Juan c. Guasca Legard and Fredy Castillo Carillo, who were charged in another indictment United States vs. Hernan Giraldo-Serna, et. al. case number 04-114-RWB. The trial in that case was scheduled for April 29th, 2008 and the information that was requested and provided by Alvaro Padilla would help the government prepare that case for trial as well as using Alvaro Padilla as a trial witness.

16. It was agreed, subsequent to the debriefings, that Assistant United States Attorney Patrick Hearn would inform counsel for the co-defendants of Alvaro Padilla's intention to cooperate. This information would be utilized in the government's negotiations to resolve those cases without the necessity of a trial.

17. While plea negotiations were ongoing, on April 17th or 18th, 2008 United States Attorney Patrick Hearn continued debriefing Alvaro Padilla to prepare him for his presentation of trial testimony. The docket reflects proposed jury questions and other motions were filed by the government indicating that they were preparing to proceed to trial. Prior to trial, Huber

Gomez, Fredy Castillo and Juan Guasca executed plea agreements. Even though those plea agreements are sealed, counsel believes that at least two (2), if not all three (3) defendants have also agreed to cooperate. It is obvious that one of the factors these defendants took into consideration before deciding to plead guilty was that Alvaro Padilla was listed and ready to testify at their trial. Alvaro Padilla provided substantial assistance and was ready to receive his credit.

**Hernan Giraldo-Serna, Nodier Giraldo-Giraldo and Rodrigo Tovar Pupo Extradited to the United States:**

18. On or about May 15th, 2008, as a surprise to everyone, including the United States Attorneys Office, Hernan Giraldo-Serna, Nodier Giraldo-Giraldo and Rodrigo Tovar Pupo, members of the infamous Auto Defensas Unidas de Colombia (A.U.C.), were extradited to the United States. They were defendants in the indictment mentioned above, but were not in the United States at the time Alvaro Padilla provided his initial debriefings and assistance. Alvaro Padilla continued his commitment to cooperate in those cases. Counsel is not sure whether the United States Attorneys Office disclosed to defense counsel for Hernan Giraldo-Serna and Nodier Giraldo-Giraldo that Alvaro Padilla was cooperating. However, by the time they arrived in the United States it was common knowledge in the jail. Again, it is clear that one of the factors that was considered by Hernan Giraldo Serna and Nodier Giraldo Giraldo, was that Alvaro Padilla would testify against them. They both pled guilty and are awaiting sentencing. Alvaro Padilla continued to honor his agreement. The only defendant in the 04-114 indictment that may not have already pled guilty is Rodrigo Tovar Pupo a/k/a Jorge 40. The information that Alvaro Padilla could provide on the two defendants above that did plead guilty was significant. The information that Alvaro Padilla could provide on Jorge 40 is only peripheral

and historical since Alvaro Padilla never dealt directly with him. Counsel understands that negotiations concerning Jorge 40's plea are ongoing and he will or has pled guilty.

**United States vs. Jaime Medina**, Case No. 06Cr00232

19. The most recent information provided by Alvaro Padilla was significant. Assistant United States Attorney Donnell Turner, in the District of Columbia, is presently prosecuting fifteen (15) Colombian co-conspirators who will be going to trial in October and December of 2009 in the matter of U.S. vs. Jaime Medina a/k/a Montel, case number 06-Cr-00232.

20. Although Alvaro Padilla had very little information concerning the fifteen (15) defendants in that indictment, at the debriefing with Assistant United States Attorney Donnell Turner Alvaro Padilla provided the names of two Colombian co-conspirators, both who have already pled guilty and had been sentenced in the Southern District of Florida in case number 04-20065-Cr-Seitz. It was believed that they both had substantial information about Jaime Medina's organization, the lead defendant in that indictment.

21. As a result of Alvaro Padilla's information the two Colombian co-conspirators, Julio Pereira and Cesar Mantilla, were able to assist the government's case against Jaime Medina. Assistant United States Attorney Donnell Turner has traveled to Miami on two occasions and has debriefed both co-conspirators. Julio Pereira was involved in a number of drug transactions with Jaime Medina and will be moved from FCI, Miami to Washington as a potential witness in Jaime Medina's trial. The other co-conspirator's information was not as extensive, but he too was present during the negotiations of the 300kilo drug deal. Assistant United States Attorney Donnell Turner would agree that these witnesses will be significant and make it easier for him to obtain a conviction.

## **ALVARO PADILLA'S IMPORTANCE**

22. Alvaro Padilla was born and raised on his father, Alvaro Padilla-Redondo's, farm in Buritaca, Colombia. Alvaro Padilla worked for his father. The farm is located close to or on the Rio Buritaca River (a river that is a short distance from the north coast of Colombia which empties into the Atlantic Ocean). Alvaro Padilla has lived on that farm his entire life and is by profession a farmer.

23. Being a lifetime resident of Buritaca, Colombia, Alvaro Padilla-Redondo knew the residents and paramilitary that lived and controlled this area. Alvaro Padilla-Redondo's farm became the perfect place for cocaine manufacturers and distributors to store cocaine shipments until the cocaine was ready to be transported. When the cocaine was ready to be transported would assist his father, Alvaro Padilla-Redondo, in transporting the cocaine down the Rio Buritaca River to the Atlantic ocean where the cocaine would be loaded onto go-fast boats and transported to different trans-shipments points in the Carribean. Ultimately, the cocaine would be transported to the United States, Europe or elsewhere.

24. Alvaro Padilla's father was known and trusted by everybody. Alvaro Padilla's father knew and had personal relationships with many of the soldiers that controlled and protected his area. These soldiers were members of the paramilitary organization known as the Auto Defensas Unida de Colombia (herein, "A.U.C."). Alvaro Padilla is not a member of the A.U.C. and has never been involved in violent military activities.

25. Alvaro Padilla worked for his father who was paid by drug traffickers to store the drugs (either on his farm or nearby places) and then move the drugs down the Rio Buritaca River to the Atlantic Ocean where it would then be loaded onto go-fast boats.

26. Alvaro Padilla's cooperation is significant because he has provided information concerning the groups that transported the cocaine.

## CONCLUSION AND SENTENCING RECOMMENDATION

27. Alvaro Padilla has provided complete, accurate and useful information.  The government used that information in its negotiations which in-part led to four (4) guilty pleas, additional cooperators, and the possibility of additional indictments and successful prosecutions. Alvaro Padilla was ready, willing and able to testify as a trial witness for the government. Additionally, he provided the names of other co-conspirators that are providing information and will be used in the trial of fifteen (15) additional defendants which have been extradited to the United States.

**WHEREFORE**, the Defendant, ALVARO PADILLA-MELENDEZ, respectfully requests this Honorable Court grant this motion and consider that the defendant deserves a forty (40) percent reduction from the eighty one (81) months, resulting in a forty eight (48) month sentence.

Respectfully submitted,

| | |
|---|---|
| STEPHEN J. GOLEMBE, ESQUIRE | HOWARD KATZOFF, ESQUIRE |
| 2340 South Dixie Highway | Local Counsel |
| Miami, Florida 33133 | 717 D Street, NW |
| (305) 858-0404 office | Suite 310 |
| (305) 858-3100 facsimile | Washington, DC 20004 |
| GolembeS@GolembeLaw.com | KatzoffH@aol.com |

_____    _____

STEPHEN J. GOLEMBE, ESQUIRE        HOWARD KATZOFF, ESQUIRE

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy was forwarded to Assistant United States Attorney Patrick Hearn, 1400 New York Avenue, N.W., Room 8306, Washington, DC 22305 on this ___ day of June, 2009.

_____                  _____
STEPHEN J. GOLEMBE, ESQUIRE                     HOWARD KATZOFF, ESQUIRE