UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | : | |
| | : | |
| Plaintiff | : | |
| v. | : | CRIMINAL NO.  08-301 (RMU) |
| | : | |
| | : | **FILED UNDER SEAL** |
| **ALVARO ANTONIO** | : | |
| **PADILLA-MELENDEZ** | : | |
| a.k.a. "El Topo" | : | |
| | : | |
| Defendant. | : | |

### MOTION PURSUANT TO 18 U.S.C. § 3553(e) AND U.S.S.G. § 5K1.1 AND MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, Patrick H. Hearn, Trial Attorney, United States Department of Justice, Narcotic and Dangerous Drug Section, hereby respectfully moves the court, pursuant to 18 U.S.C. §3553(e) and U.S.S.G. § 5K1.1, to impose a sentence below the sentence of eighty-one (81) months which was agreed upon by the parties in the Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(c), which also falls within the Sentencing Guidelines range of 70 to 87 months, as set forth in Alvaro Antonio Padilla-Melendez's Pre-Sentence Report (PSR). In support of this motion and sentencing memorandum, the government states the following:

### BACKGROUND

On September 14, 2005 a federal grand jury returned an indictment against the defendant, charging him with conspiracy to distribute five or more kilograms of cocaine knowing or intending that it would be imported into the United States.  On December 9, 2005 the defendant was arrested in Colombia, pursuant to a provisional arrest request, based upon the arrest warrant

issued in this case, from the United States government. On September 21, 2007 the defendant was extradited to the United States from Colombia. He has remained in custody since the date of his arrest on December 9, 2005.

On September 30, 2008 the defendant entered a guilty plea to Count I of the Information, conspiracy to distribute five kilograms or more of cocaine knowing or intending that it would be imported into the United States. The sentencing is scheduled for August 4, 2009.

The defendant's Sentencing Guidelines calculation, according to the PSR, placed him at a total offense level of 27, resulting in a guideline range of 70 to 87 months. The Plea Agreement also calculated the defendant's Sentencing Guidelines total offense level at a level 27. Additionally, the parties agreed as part of the Plea Agreement to recommend to the Court that a sentence of 81 months be imposed, which is within the Sentencing Guidelines range of 70 to 87 months, pursuant Fed. R. Crim. P. 11(c)(1)(c). The parties further anticipated that if the defendant provided "substantial assistance" to the government, the sentence of 81 months would be the sentence length from which the parties would recommend a further reduction of the defendant's sentence for "substantial assistance."

### FACTUAL BACKGROUND

From on or about sometime in 2005 and continuing through 2006, in the country of Colombia and elsewhere, the defendant was a member of the cocaine trafficking conspiracy. The defendant's primary role in the conspiracy was to participate in cocaine trafficking operations assisting the "go-fast" boat operations and receiving cocaine shipments in Colombia which were stored on his property prior to the cocaine leaving Colombia on a "go-fast" boat.

### SENTENCING FACTORS AND RECOMMENDATION

**I. Sentencing considerations pursuant to 18 U.S.C. § 3553(a)**

Title 18 section 3553(a) sets forth factors to be considered by the Court in imposing sentence. These factors, in part, include the following:

   **A. The nature and circumstances of the offense.**

This case involves a Colombian drug trafficking organization responsible for acquiring large amounts of cocaine and exporting it into the United States. Generally, this type of conduct has had a significant detrimental effect on the United States, costing lives and resources. The organization transported multi-ton quantities of cocaine onboard maritime vessels, known as "go-fast" boats, from Colombia through the Carribean Sea to Central America or Mexico intending and knowing the cocaine was for delivery into the United States.

Beginning in October 2004, the drug trafficking organization started shipping cocaine intended for the United States using "go-fast" style vessels known as "launchas rapidas" for the sole purpose of transportation of large (multi-thousand kilogram) quantities of cocaine from the North Coast of Colombia to Central America or Mexico. From Central America or Mexico the cocaine shipment would continued to be transported northward eventually ending up in the United States. Over the course of the conspiracy the defendant participated in several shipments of cocaine which were stored at his property. Those cocaine shipments were then transported to the North Coast of Colombia and shipped out of Colombia via "go-fast" boats. The "go-fast" boats would typically carry cocaine shipments of approximately 1000 kilograms or more. One particular "go-fast" boat cocaine shipment from this conspiracy was seized on April 16, 2005 by the United States Coast Guard. Onboard the "go-fast" boat was 2,340 kilograms of cocaine. Each member of the organization, including Alvaro Antonio Padilla-Melendez, assisted in a

variety of ways such as, arranging logistical support and transportation of cocaine, providing supplies for the "go-fast" boats, arranging for the receipt of cocaine by the organization or arranging for the delivery of the cocaine to other organizations.

Specifically, the investigation determined that the defendant was responsible for arranging and providing storage, in addition to assisting with transportation, of the cocaine shipments.  The defendant owned property in the North Coast area of Colombia which he allowed the conspiracy to store and protect cocaine shipments prior to the cocaine shipments leaving Colombia via a "go-fast" boat.  During the investigation the defendant was overheard in several intercepted telephone calls with other defendants discussing the departure and subsequent seizure of the cocaine onboard the "go-fast" boat  by the United States Coast Guard on April 16, 2005.

### B.  The history and characteristics of the defendant.

The government would concur with PSR regarding defendant's history and characteristics.  Additionally, the government is not aware of any contacts with the criminal justice system in Colombia or elsewhere.

### C.  Need for sentence imposed.

It is important to punish those who participate in drug trafficking; however, such a sentence should take into consideration the defendant's role and his level of cooperation.

## II. Defendant's substantial assistance to the government under U.S.S.G. § 5K1.1

Section 5K1.1. of the Sentencing Guidelines states:

**Substantial Assistance to Authorities**

1. Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an

offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
> (3) the nature and extent of the defendant's assistance;
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
> (5) the timeliness of the defendant's assistance.

The government believes the defendant has provided substantial assistance to the government. The government moves for the court to depart downward from the defendant's sentence of 81 months and impose a sentence below that range.

### A. Assistance rendered by the defendant.

The defendant upon his arrest ,through his attorney, informed the government of his desire to cooperate and assist the government. Upon his arrival in the United States began to meet with the government and actively cooperate by agreeing to provide information and testimony in this case and any others cases as needed by the government. Thereafter, the defendant cooperated with the government and provided evidence in this and other cases. The defendant was debriefed by the government on numerous occasions. He provided information regarding the cocaine trafficking activities of co-defendants known to him and consistently agreed to testify against them. Ultimately, his cooperation was made known to his co-defendants in this case and one additional case.

**U.S. v. Vengoechea,** Case No. 05-341.  This is the case currently before the Court. Alvaro Antonio Padilla,-Melendez was an indicted defendant in this case.  The defendant provided specific information regarding the activities of the cocaine trafficking organization.  He provided information regarding the number and size of the cocaine shipments that he assisted the organization with storing and transporting to the "go fast" boats.  His assistance was substantial because his cooperation and possible testimony provided corroboration and insight from regarding the organization and the cocaine trafficking activities of the co-defendants.  As a result of his cooperation the defendant was considered a witness for the government and the remaining defendants, who were still in a trial posture, were informed that the defendant was a government witness.  The remaining defendants pleaded guilty.

**United States vs. Hernan Giraldo-Serna**, Case No. 04-114 (Round 1).  Three defendants, Huber Gomez-Luna, Juan Carlos Guasca-Legarda and Fredy Castillo-Carillo, were scheduled for a joint jury trial in the District Court of the District of Columbia before the Honorable Judge Walton.  The evidence, prior to defendant's cooperation, consisted of Colombian and United States law enforcement witnesses, recorded calls, seizures, and surveillance.  The defendant provided evidence regarding the cocaine trafficking activities of the three defendants and was willing to testify for the government at the jury trial.  The government informed defense counsel for the three defendants of Alvaro Padilla's intention to cooperate. This information was utilized in the government's negotiations to resolve those cases without the necessity of a trial.  Subsequently, all three defendants pleaded guilty prior to date of the jury trial.

**United States vs. Hernan Giraldo-Serna**, Case No. 04-114 (Round 2).  Subsequent to the resolution of the cases involving Huber Gomez-Luna, Juan Carlos Guasca-Legarda and Fredy Castillo-Carillo, additional defendants, who had been arrested in Columbia, were extradited to the United States.   The defendant had personal knowledge of the cocaine trafficking activities of the several of those individuals,  Hernan Giraldo-Serna, Nodier Giraldo-Giraldo and Martin Peneranda-Osario.  Additionally, the defendant, although he could not provide direct evidence regarding the other defendants in <u>Girado-Serna</u>, including Rodrigo Tovar Pupo, the defendant would have been able to provide corroborating testimony, if needed.  The defendant was not identified by the government as a witness against any of the defendants in <u>Giraldo-Serna</u> (Round 2) except for Martin-Peneranda.

**U.S. v. Jaime Medina**. Case No. 06-232.  This is a case that is currently pending before the Honorable Judge Lamberth.  The defendant provided to the government the names of two individuals he believed may be able to assist the government.  One of those individuals will be a witness for the government if the case were to go to trial.

**B.  Defendant's truthfulness, completeness and reliability**.

After the defendant's extradition to the United States and prior to entering a guilty plea, the defendant met with the government on multiple occasions and provided candid and complete accounts of his criminal activity as well that of his co-conspirators.  The government was able to confirm his truthfulness through independent evidence – including wiretaps, seizures, documentary evidence, and cooperating witnesses.  The defendant agreed to cooperate fully with the government and subsequently entered a plea and cooperation agreement.

**C. Danger to defendant and his family**.

Except for the generalized risk associated with defendants who cooperate with the government, the government is unaware of any specific threats or danger to the defendant as a result of his cooperation.

## CONCLUSION

Wherefore, based upon the statements and facts presented to the court, the government respectfully recommends and moves, pursuant to U.S.S.G. § 5.K1.1 and 18 U.S.C. §3553(e), for a reduction of 25% from a sentence of 81 months for a 60 month and 22 day sentence.

> Respectfully submitted,
>
> PAUL O'BRIEN, Chief
> Narcotic and Dangerous Drug Section
> U.S. Department of Justice
>
> _____/s/_____
> Patrick H. Hearn
> Trial Attorney
> Narcotic and Dangerous Drug Section
> U.S. Department of Justice
> 1400 New York Avenue, N.W. - 8th   Floor
> Washington, D.C.  20005
> (202) 305-7606

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via email to counsel for defendant, Stephen Golembe on July 31, 2009.

> _____/s/_____
>
> Patrick H. Hearn